**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AETNA NETWORK SERVICES LLC,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | **CIVIL ACTION NO: ____** |
| **v.** | § | |
| | § | |
| **FIRST STEP TO RECOVERY, LLC and ROD SEILER,** | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | **JURY TRIAL DEMANDED** |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Aetna Network Services LLC, on behalf of itself and its applicable affiliates ("Aetna" or "Plaintiff"), files this Original Complaint against Defendants First Step to Recovery, LLC ("First Step") and Rod Seiler ("Seiler") (collectively, "Defendants"), and respectfully shows the Court as follows:

## I. PARTIES

1. Plaintiff Aetna Network Services LLC is a limited liability company registered with the Texas Secretary of State as a foreign limited liability company authorized to conduct business in the State of Texas. Aetna, by and through its affiliates, is charged with ensuring that appropriate and affordable healthcare is available to members of its various health benefits plans, including in Texas.

2. Defendant First Step to Recovery, LLC is a Texas limited liability company that operates drug and alcohol rehabilitation centers in Texas, with its principal place of business

located at 7676 Hillmont Street, Suite 201, Houston, Texas 77040, and Tax Identification Number 82-4439253. First Step may be served with process through its registered agent, Rod Seiler, at 1823 W. Main Gun Barrel City, TX 75156, or wherever it may be found.

3. Defendant Rod Seiler is an individual residing in Texas and is the principal owner of First Step. Seiler may be served with process at 5701 Winsome Lane 10, Houston, TX 77057, or wherever he may be found.

## II. JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. Aetna seeks actual damages of not less than $660,127.91, plus additional damages, interest, and attorneys' fees.

5. The Court has personal jurisdiction over First Step because it is a Texas limited liability company with its principal place of business in Harris County, Texas. The Court has personal jurisdiction over Seiler because he is a Texas resident and because the claims asserted against him arise from his conduct in Texas.

6. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District and in the State of Texas, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the provision of services and the submission of claims from First Step's Houston facility. Assignment to the Houston Division is proper because First Step's principal place of business and the events giving rise to the claims are located in Harris County, Texas, which lies within the Houston Division. *See* 28 U.S.C. § 124(b)(2).

## III. FACTUAL BACKGROUND

### A. The Facility Agreement

7. Aetna administers and insures healthcare benefits for medical services lawfully rendered by eligible providers to its members pursuant to the terms of health benefits plans issued to individuals and employers throughout the United States, including in Texas.

8. First Step purports to operate drug treatment, rehabilitation, and recovery centers in Texas and claims to offer various outpatient treatment and recovery programs.

9. During all times relevant to this matter, First Step was an in-network provider with Aetna, meaning that it was party to a Facility Agreement with Aetna (the "Facility Agreement" or "Agreement") under which First Step agreed to provide covered services to Aetna's members at agreed-upon rates. The Facility Agreement was effective beginning April 15, 2020. Because the Facility Agreement contains confidential and proprietary rate and business terms, Plaintiff will make it available to the Court and the parties subject to an appropriate protective order.

10. The Facility Agreement made clear that First Step was subject to Aetna's payment and coverage policies and was required to bill in compliance with industry standards and applicable regulations. Among other things, First Step agreed "to comply with [Aetna] Policies of which [it] knows or reasonably should have known, including, but not limited to, those contained in [Aetna's] Provider Manual." Facility Agreement § 1.3.

11. First Step further agreed to comply with all Applicable Law related to the Agreement and the provision of and payment for healthcare services, Facility Agreement § 1.1(c), and to submit complete, clean claims for Covered Services containing all information needed to process the claims. *Id.* § 1.4(c).

12. The Facility Agreement further requires First Step to notify Aetna promptly after becoming aware of any overpayment and to cooperate with Aetna for the prompt return of any overpayment. Facility Agreement § 1.4(f). The Agreement also provides that Aetna is not obligated to pay for claims that are billed in violation of Applicable Law, the Agreement, or Aetna's Policies. *Id.* § 1.4(g).

13. The Texas State Compliance Addendum to the Facility Agreement, which is expressly incorporated into and controls over the Agreement, further provides that if First Step fails to repay an overpayment within forty-five (45) days of receipt of written notice from Aetna, First Step shall pay a contracted penalty of 1.0% per month simple interest on the unrepaid portion of the overpayment, beginning on the forty-sixth (46th) day after receipt of notice of the overpayment.

14. The Facility Agreement is governed by the laws of the state where the facility is located, here, Texas. Facility Agreement § 8.2.

15. In short, the Facility Agreement required First Step to comply with Aetna's policies, to comply with all rules and regulations governing proper billing and claims submission, and to return any overpayments within a reasonable time after being notified. As explained below, First Step failed to comply with each of these provisions by submitting inadequately documented and unsupported claims to Aetna, which was further compounded by its retention of overpayments in violation of its contractual obligations and applicable billing guidelines.

**B. Background on Healthcare Billing**

16. Healthcare providers submit health insurance claims by completing standard billing forms. Under federal law, these forms require providers to use numerical codes that describe the services for which the provider seeks payment, as maintained by the American Medical

Association's Current Procedural Terminology ("CPT") and the Centers for Medicare & Medicaid Services ("CMS") Healthcare Common Procedure Coding System ("HCPCS"). *See* 45 C.F.R. § 162.1002(a)(5), (b)(1), (c)(1).

17. Aetna relies upon providers to submit accurate information and make truthful representations on claim forms in order to determine whether a service is covered and the amount of payment, and specifically relies on providers to input the CPT or HCPCS codes that accurately describe the services provided in accordance with applicable standards and guidance.

18. Providers intend for Aetna to rely upon the CPT and HCPCS codes and the other representations contained within a claim form in order to obtain reimbursement from Aetna for the covered services provided to its members.

19. Applicable law, the claim forms themselves, and Aetna require that all claim submissions be certified as correct and complete and that the benefits being claimed be limited to charges actually incurred. Submission of medical claims containing inaccurate or improper CPT or HCPCS codes may expose healthcare providers to significant civil liability under applicable federal and state law.

20. Upon receipt of a healthcare claim form, Aetna, relying upon the accuracy and completeness of the claim form, evaluates the codes submitted by the provider to determine whether the medical services are covered and payable. If the services are covered under the terms of the patient's Aetna healthcare plan, Aetna then determines the rate of reimbursement for those covered services and pays the provider.

**C. First Step's Deficient Billing Practices**

21. From January 2022 through approximately April 2025, First Step submitted at least 2,378 medical claims to Aetna for addiction recovery services and related charges. A complete list

of these claims contains protected health information subject to the Health Insurance Portability and Accountability Act ("HIPAA") and therefore is not attached to this Complaint; it will be produced subject to a HIPAA-compliant protective order.

22. Aetna paid First Step no less than $660,127.91 as a result of these claims.

23. First Step primarily billed using CPT Codes 90791, 90837, 90834, and 90853, and also billed Aetna for addiction treatment using HCPCS Level II codes H0010, H0015, H2036, and S0201. CPT Code 90791 describes a psychiatric diagnostic evaluation for the initial intake and comprehensive assessment of a new patient's mental health history and current symptoms by a qualified mental health professional. CPT Code 90837 describes an individual outpatient psychotherapy session lasting at least 53 minutes, provided by a licensed mental health professional. CPT Code 90834 describes an individual psychotherapy session lasting between 38 and 52 minutes by mental health professionals such as psychologists, psychiatrists, and social workers. CPT Code 90853 describes group sessions with multiple, unrelated patients, focusing on a specific mental health problem, by a qualified mental health professional.

24. Under CMS guidelines, billing for these psychotherapy services requires individual, detailed documentation for each participant to support medical necessity and to ensure proper reimbursement from payers, including, but not limited to: (i) the exact amount of time treatment was rendered; (ii) the modalities and frequency of treatment; and (iii) clinical notes for each encounter, including diagnosis, symptoms, functional status, focused mental health examination, treatment plan, and the name and credentials of the person providing the service.

25. Two HCPCS codes account for the largest share of First Step's improper billing. HCPCS code S0201 describes partial hospitalization services, less than 24 hours, per diem. Partial hospitalization is a nonresidential, highly intensive, time-limited treatment modality that includes

psychiatric, psychological, social, and vocational elements under medical supervision, and it is designed for patients with moderate to severe mental or emotional disorders who require more intensive and comprehensive services than those offered in outpatient treatment programs, either as a transition from inpatient psychiatric hospitalization to community-based care or as a substitute for an inpatient admission. Billing S0201 therefore requires, at a minimum, documentation that the patient's condition warranted that level of care and that a full, medically supervised day of individualized partial hospitalization services was actually rendered for each per diem billed. First Step's records do not support those requirements.

26. HCPCS code H0015 describes alcohol and/or drug services provided through an intensive outpatient treatment program that operates at least three hours per day and at least three days per week and is based on an individualized treatment plan, including assessment, counseling, crisis intervention, and activity therapies or education. Billing H0015 therefore requires documentation that the patient was medically and psychologically assessed, that the patient actually participated for the required minimum hours and days, and that the services furnished followed an individualized treatment plan tailored to that patient's needs. First Step's records, which contain identical details across patients and no evidence of individualized evaluation or treatment, do not support the H0015 claims it submitted to Aetna.

27. A review by Aetna's Special Investigations Unit ("SIU") of the medical claims and clinical records submitted by First Step revealed that the purported medical documentation does not support any of the claims that were submitted to Aetna.

28. There is no adequate documentation to show that patients were physically examined by a licensed medical doctor, Advanced Practice Registered Nurse, or any other qualified medical professional authorized to bill for the services described above.

29. In addition to failing to show treatment by a qualified medical professional, each of the reviewed records contained identical details, and there was no documentation of any individualized evaluation or treatment of the patient.

30. The medical records also revealed that many patients had serious mental and physical health conditions that went untreated by First Step's facility staff and were not appropriately referred to a qualified professional for immediate attention, as the community standard of care requires.

**D. Aetna's Attempts to Recover the Overpayment**

31. On or about June 16, 2025, in response to the SIU's internal review, Aetna sent an overpayment demand letter to First Step providing notice of the issues described above and demanding repayment of the overpayment amount of $660,127.91.

32. Aetna, through counsel, sent a second overpayment demand to First Step on October 8, 2025.

33. First Step's response to Aetna's repeated communications seeking return of the overpayment reflected no interest in resolving the matter before formal legal proceedings.

34. To date, First Step has failed to comply with Aetna's overpayment demands, as it is required to do under the Facility Agreement, and continues to hold money that does not rightfully belong to it.

**E. First Step's Breach of the Arbitration Provision and Abandonment of the Arbitration**

35. Section 7.2 of the Facility Agreement provides that any controversy or claim arising out of or relating to the Agreement, except for injunctive relief or any other form of equitable relief, will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

36. Aetna honored that provision. Aetna initiated arbitration against First Step on November 6, 2025, before the AAA, *styled Aetna Network Services LLC v. First Step to Recovery, LLC*, No. 01-25-0005-5124 (the "Arbitration"). On April 23, 2026, Aetna filed its First Amended Demand for Arbitration asserting claims for breach of contract, money had and received, and negligence arising from the facts described above.

37. First Step entered an appearance in the Arbitration through its counsel.

38. Having appeared, First Step was obligated under Section 7.2 of the Facility Agreement and the AAA Commercial Rules incorporated therein to pay its required share of the arbitration fees and deposits and to participate in the Arbitration in good faith. First Step did neither. First Step failed and refused to pay the arbitration fees and deposits required of it and failed to participate in the Arbitration as the Agreement requires.

39. As a direct result of First Step's nonpayment and refusal to participate, the AAA terminated the Arbitration on or about October 13, 2026. First Step's conduct deprived Aetna of the arbitral forum for which it bargained and rendered the arbitration provision incapable of performance as to this dispute. First Step's refusal to participate in the Arbitration unnecessarily increased Aetna's costs and forced it to incur additional fees and expenses.

40. By failing to pay the required fees and abandoning the Arbitration, First Step materially breached the Facility Agreement, waived and forfeited any right to compel arbitration

of Aetna's claims, and is estopped from relying on the arbitration provision to avoid adjudication of those claims in this Court. In addition, Aetna's claim for money had and received is an equitable claim that falls outside the scope of Section 7.2 in any event.

41. First Step's breach forced Aetna to incur fees, costs, and attorneys' fees in the abandoned Arbitration and now to file and prosecute this lawsuit to obtain the relief to which it is entitled.

**F. Rod Seiler's Domination and Misuse of First Step**

42. Seiler is, and at all relevant times was, the principal owner of First Step. On information and belief, Seiler at all relevant times exercised complete ownership, management, and control over First Step's operations, billing practices, finances, and bank accounts, and directed the decisions described in this Complaint.

43. On information and belief, Seiler directed, authorized, or knowingly permitted First Step to submit the 2,378 claims described above, each of which certified to Aetna that the services billed were accurately coded, properly documented, and actually rendered by qualified professionals, when Seiler knew those representations were false. Those submissions were made with dishonesty of purpose and an intent to deceive Aetna into paying claims it would not otherwise have paid.

44. On information and belief, Seiler caused the proceeds of those claims, totaling not less than $660,127.91, to be distributed, transferred, or otherwise diverted from First Step to himself or for his direct personal benefit, leaving First Step without sufficient assets to repay the overpayment that it knew it owed to Aetna.

45. On information and belief, after receiving Aetna's overpayment demands, Seiler caused First Step to refuse repayment, and then caused First Step to appear in the Arbitration but

to refuse to pay the required fees and to abandon the proceeding, all for the purpose of delaying and evading First Step's obligations to Aetna while Seiler retained the benefit of the funds.

46. On information and belief, Seiler has commingled his personal funds and affairs with those of First Step, has caused First Step to be inadequately capitalized relative to its known liabilities, and has used First Step as a mere tool or business conduit for his own personal benefit, such that holding only First Step liable would sanction a fraud and promote injustice.

**G. Conditions Precedent**

47. All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived or excused. *See* Fed. R. Civ. P. 9(c). Among other things, Aetna provided written notice of the overpayment and an opportunity to cure, participated in the dispute-resolution process under the Agreement, and pursued arbitration until First Step's own breach rendered arbitration unavailable.

## IV. CAUSES OF ACTION

### COUNT ONE: BREACH OF CONTRACT — IMPROPER BILLING AND RETENTION OF OVERPAYMENTS (Against First Step)

48. Aetna incorporates the preceding paragraphs as if fully set forth herein.

49. The Facility Agreement is a valid and enforceable contract between Aetna and First Step.

50. Aetna performed, tendered performance of, or was excused from performing its obligations under the Facility Agreement, including by paying First Step's claims.

51. Under the Facility Agreement, First Step was contractually bound, among other things, to comply with all Applicable Law and Aetna's Policies, to submit complete and clean claims, and to return overpayments. Facility Agreement §§ 1.1(c), 1.3, 1.4(c), 1.4(f).

52. First Step breached the Facility Agreement by submitting claims to Aetna without adequate documentation showing that patients were physically examined by a qualified medical professional.

53. First Step further breached the Facility Agreement by submitting claims that contained identical details without documentation of any individualized evaluation or treatment.

54. Aetna notified First Step of these overpayments in detail on June 16, 2025, and again on October 8, 2025, but First Step has not refunded any portion of the overpayments. The Facility Agreement requires First Step to return any such overpayment promptly, and First Step's continued retention of the overpayments is an ongoing breach of the Agreement.

55. As a direct and proximate result of First Step's breaches, Aetna has suffered actual damages of not less than $660,127.91, together with contractual interest at the rate of 1.0% per month simple interest on the unrepaid overpayment beginning on the forty-sixth (46th) day after First Step's receipt of Aetna's written notice of overpayment, as provided in the Texas State Compliance Addendum.

**COUNT TWO: BREACH OF CONTRACT — FAILURE TO PAY ARBITRATION FEES AND PARTICIPATE IN ARBITRATION (Against First Step)**

56. Aetna incorporates the preceding paragraphs as if fully set forth herein.

57. Section 7.2 of the Facility Agreement obligated First Step to resolve covered disputes through binding arbitration administered by the AAA under its Commercial Rules, which Section 7.2 incorporates into the Agreement. That obligation necessarily included First Step's duties to pay its required share of the AAA's fees and deposits and to participate in the arbitration in good faith.

58. Aetna performed its obligations under Section 7.2 by initiating and prosecuting the Arbitration and paying the fees required of it.

59. First Step breached Section 7.2 by appearing in the Arbitration through counsel and then failing to pay the required arbitration fees and deposits and failing to participate in the Arbitration as required, which caused the AAA to terminate the Arbitration.

60. As a direct and proximate result of First Step's breach, Aetna has suffered actual damages, including the filing and administrative fees, deposits, and other costs it paid to the AAA, and the attorneys' fees and expenses it incurred in the Arbitration that were rendered futile by First Step's breach, in an amount to be proven at trial.

**COUNT THREE: MONEY HAD AND RECEIVED (Against First Step)**

61. Aetna incorporates the preceding paragraphs as if fully set forth herein.

62. In addition, or in the alternative, First Step is liable to Aetna for money had and received. First Step is entitled to no more than the contractually predetermined reimbursement rates payable under the Facility Agreement for Covered Services, as defined by the terms of the applicable plans, for the particular services rendered to Aetna's members.

63. First Step submitted claims to Aetna that were not adequately documented or supported and thereafter accepted money for medical services that were not payable to the extent paid by Aetna. First Step therefore holds money, in an amount of not less than $660,127.91, that in equity and good conscience belongs to Aetna, and it has failed to return that money.

64. Aetna is entitled to recover from First Step all money had and received as a result of First Step's erroneous billing practices, in an amount of not less than $660,127.91.

**COUNT FOUR: NEGLIGENCE (Against First Step)**

65. Aetna incorporates the preceding paragraphs as if fully set forth herein.

66. In addition, or in the alternative, First Step is liable to Aetna for negligence. First Step owed Aetna a duty to exercise reasonable professional care and diligence in the provision of

healthcare and billing services, including by submitting accurate, complete, and properly documented claims in accordance with industry standards, CMS guidelines, and the terms of the Facility Agreement.

67. First Step breached that duty by, among other things, failing to maintain adequate clinical documentation to support the claims it submitted to Aetna; submitting claims containing identical details without evidence of individualized patient evaluation or treatment; failing to ensure that patients were examined by qualified medical professionals authorized to bill for the services claimed; and failing to implement and maintain adequate internal billing and compliance procedures sufficient to ensure that claims submitted to Aetna were accurate, complete, and consistent with applicable professional standards and guidelines.

68. By submitting claim forms to Aetna, First Step represented that the information contained therein was accurate and complete. First Step's failure to exercise reasonable care in preparing and submitting its claims resulted in material inaccuracies that caused Aetna to make payments it would not otherwise have made.

69. As a direct and proximate result of First Step's negligence, Aetna paid at least $660,127.91 for claims that were not supported by adequate documentation and were not rendered in accordance with applicable professional and billing standards, and Aetna has been damaged in an amount of at least $660,127.91.

**COUNT FIVE: BREACH OF CONTRACT — DAMAGES FROM COMPELLED LITIGATION (Against First Step)**

70. Aetna incorporates the preceding paragraphs as if fully set forth herein.

71. First Step's breaches of the Facility Agreement described in Counts One and Two, including its refusal to repay the overpayments after written notice and its abandonment of the

agreed arbitral forum, have required Aetna to file and prosecute this lawsuit to recover the amounts owed to it.

72. Aetna has retained the undersigned counsel to prosecute this action and has agreed to pay counsel a reasonable fee. As a natural, probable, and foreseeable consequence of First Step's breaches, Aetna has incurred and will continue to incur attorneys' fees, expenses, and court costs in this action.

73. Aetna presented its claims to First Step in writing on June 16, 2025, and again on October 8, 2025, and First Step failed to tender payment of the just amount owed within thirty days of presentment. Accordingly, Aetna is entitled to recover its reasonable attorneys' fees from First Step, in addition to the amount of its claims and costs, under Texas Civil Practice and Remedies Code § 38.001(b)(8) for its claims for breach of an oral or written contract, as well as all other damages proximately caused by First Step's breaches.

## COUNT SIX: ALTER EGO AND PIERCING THE CORPORATE VEIL — TEX. BUS. ORGS. CODE §§ 21.223 AND 101.002 (Against Seiler)

74. Aetna incorporates the preceding paragraphs as if fully set forth herein.

75. Under Texas Business Organizations Code § 101.002, Section 21.223 of the Code applies to a limited liability company and its members, owners, and managers to the same extent it applies to a corporation and its shareholders. Under § 21.223(b), an owner may be held liable for a contractual obligation of the entity, or for any matter relating to or arising from that obligation, on the basis that the owner is or was the alter ego of the entity, or on the basis of actual fraud or a sham to perpetrate a fraud, if the obligee demonstrates that the owner caused the entity to be used for the purpose of perpetrating, and did perpetrate, an actual fraud on the obligee primarily for the direct personal benefit of the owner.

76. Seiler is the principal owner of First Step and, on information and belief, at all relevant times dominated and controlled First Step such that First Step was his alter ego and had no separate mind, will, or existence of its own.

77. Seiler caused First Step to be used for the purpose of perpetrating, and did perpetrate, an actual fraud on Aetna. Specifically, and on information and belief, Seiler caused First Step to submit at least 2,378 claims to Aetna falsely representing that the services billed were properly documented, accurately coded, and rendered by qualified professionals, with dishonesty of purpose and the intent to deceive Aetna into paying those claims.

78. Seiler perpetrated that actual fraud primarily for his direct personal benefit. On information and belief, Seiler caused the proceeds of the fraudulently submitted claims to be distributed, transferred, or diverted to himself or for his direct personal benefit, and then caused First Step to refuse repayment and to abandon the Arbitration so that he could retain those funds while leaving First Step unable or unwilling to satisfy its obligations to Aetna.

79. Respecting First Step's separate existence under these circumstances would sanction a fraud and promote injustice. Accordingly, Seiler should be held jointly and severally liable with First Step for all of First Step's obligations and liabilities to Aetna arising from or relating to the Facility Agreement and the conduct described in this Complaint, including all damages, interest, attorneys' fees, and costs awarded against First Step.

## V. ATTORNEYS' FEES

80. Aetna is entitled to recover its reasonable and necessary attorneys' fees, expenses, and costs from Defendants, jointly and severally, under Texas Civil Practice and Remedies Code §§ 38.001(b)(8) and 38.002, and Texas Business Organizations Code §§ 21.223 and 101.002, through trial and all appeals.

## VI. JURY DEMAND

81. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER

WHEREFORE, Plaintiff Aetna Network Services LLC respectfully requests that Defendants First Step to Recovery, LLC and Rod Seiler be summoned to appear and answer this Complaint, and that upon final trial or other disposition, the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, for:

(a) Actual damages in an amount of not less than $660,127.91;

(b) Actual damages resulting from First Step's failure to pay the required arbitration fees and to participate in the Arbitration, including the arbitration fees, deposits, costs, and attorneys' fees incurred by Aetna in the Arbitration;

(c) In the alternative, restitution of all money had and received by First Step, in an amount of not less than $660,127.91;

(d) Contractual interest at the rate of 1.0% per month simple interest on the unrepaid overpayment, as provided in the Facility Agreement;

(e) A declaration and judgment that Rod Seiler is the alter ego of First Step and is jointly and severally liable for all amounts awarded against First Step;

(f) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(g) Reasonable and necessary attorneys' fees through trial and all appeals;

(h) All costs of court; and

(i) Such other and further relief, at law or in equity, to which Plaintiff may show itself justly entitled.

Aetna further reserves the right to seek leave to amend this Complaint under Federal Rule of Civil Procedure 15 as additional facts are obtained through discovery or otherwise.

HICKS THOMAS LLP

By: */s/ Mitchell A. Reid*
MITCHELL A. REID
**Attorney-in-Charge**
State Bar No. 24037346
S.D. Tex. Bar No. 34728
mreid@hicks-thomas.com
**Of Counsel:**
JOSHUA M. FOJTIK
State Bar No. 24140239
S.D. Tex. Bar No. 3889131
jfojtik@hicks-thomas.com
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 547-2748 (Tel.)
(713) 547-9150 (Fax)

**ATTORNEYS FOR PLAINTIFF AETNA NETWORK SERVICES LLC**